UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────────────────────
LODISOL ANTONIO MONTAS

                Plaintiff,                **MEMORANDUM OF DECISION AND ORDER**

    -v.-                                         04-CV-2603 (DRH)(MLO)

COMEQ, INC. and ROUNDO AB, INC.,

                Defendants.
───────────────────────────────────────────────
COMEQ, INC. and ROUNDO AB,

                Third-Party Plaintiffs,

    -v.-

LUNA AB,

                Third-Party Defendant.
───────────────────────────────────────────────

**Appearances:**

**For the Plaintiff:**
**JOSEPH G. DELL**
Dell & Little, LLP
350 Old Country Road
Suite 105
Garden City, New York 11530

**For the Defendants and Third-Party Plaintiffs:**
**NEIL L. SAMBURSKY**
**MATTHEW JOSEPH MINERO**
Miranda & Sokoloff, LLP
240 Mineola Boulevard
Mineola, New York 11501

**For the Third-Party Defendant:**
**MARY L. MALONEY**
Cerussi & Spring
One North Lexington
White Plains, New York 10601

**HURLEY, District Judge:**

Presently before the Court are the motions by: (1) third-party defendant Luna AB ("Luna AB") to dismiss the third-party complaint pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1), (2) and (6) or, alternatively, for summary judgment pursuant to Rule 56; and (2) the motion by defendants and third-party plaintiffs Comeq, Inc. ("Comeq") and Roundo AB ("Roundo") (collectively, "Defendants") for an Order pursuant to Rule 15(a) granting them leave to file an amended third-party complaint. For the reasons stated below, Luna AB's motion is granted pursuant to Rule 12(b)(6) and the third-party complaint is dismissed; Defendants' motion for leave to file an amended third-party complaint is granted.

### BACKGROUND

On or about May 18, 2004, plaintiff Lodisol Antonio Montas ("Plaintiff") commenced this action in New York Supreme Court, Nassau County, for personal injuries sustained on August 1, 2001, while using a rolling machine allegedly "designed, created, manufactured, assembled, tested, inspected, produced, marketed, imported, distributed and sold" by Defendants. (Compl. ¶ 4.) On June 23, 2004, the action was removed to this Court. Thereafter, on November 12, 2004, Defendants filed a third-party complaint against Luna AB.

### DISCUSSION

**I.**    ***The Third-Party Complaint is Dismissed Pursuant to Rule 12(b)(6)***

   **A.**    *Applicable Legal Standard*

The court may not dismiss a complaint under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Aetna Cas. and Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 604 (2d Cir.

2005). The Court must accept all factual allegations in the proposed complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999); *Jaghory v. New York State Dep't. of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997). The Court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999); *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999).

### B. *Application to the Present Facts*

The third-party complaint alleges that if Plaintiff sustained any damages through any acts other than his own, "then said damages were sustained in whole or in part by reason of the carelessness, recklessness, negligence or intentional acts or commission or omissions on the part of Luna." (Third-Party Compl. ¶ 6.) The third-party complaint further seeks contribution and/or indemnification from Luna AB should Plaintiff recover any judgment against Defendants. (*Id.*)

Although the third-party complaint alleges that Luna AB "was and is a corporation organized and existing under the laws of the Kingdom of Sweden, having its principal place of business in Sweden," (*id.* ¶ 1), there are no allegations demonstrating why the Court might have jurisdiction over Luna AB nor are there any allegations explaining the basis for Luna AB's purported liability to Defendants. Based on these facial deficiencies, the Court finds that the third-party complaint fails to state a cause of action and is therefore dismissed.

## II. Defendants are Granted Leave to Amend

### A. Applicable Legal Standard

Defendants move for leave to amend pursuant to Rule 15(a), which provides in pertinent part that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). A motion to amend should be denied, however, "if there is an 'apparent or declared reason -- such as undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment.'" *Dluhos v. Floating and Abandoned Vessel, Known as N.Y.*, 162 F.3d 63, 69 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).[1]

Here, Luna AB has filed an untimely response to Defendants' motion for leave to amend, arguing that the proposed amendment is insufficient and lacks merit. (May 17, 2005 Letter by Mary L. Maloney.) Although Luna AB's opposition was filed untimely, in the interests of judicial economy, the Court reviews the proposed amendment for futility.

In determining whether proposed claims are futile, the Court is required to adopt the same analysis as that applied on a motion to dismiss pursuant to Federal Rule of Civil

---

[1] Although not raised by the parties, the Court notes that impleader is governed by Rule 14 which provides that a defending party may implead a party "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Fed. R. Civ. Proc. 14(a). "Relevant factors in determining whether to grant leave to implead include: (i) whether the movant deliberately delayed or was derelict in filing the motion; (ii) whether impleading would unduly delay or complicate the trial; (iii) whether impleading would prejudice the third-party defendant; and (iv) whether the third-party complaint states a claim upon which relief can be granted." *Nova Prods., Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 240 (S.D.N.Y. 2004). Thus, under either Rule 14 or 15(a), the governing considerations are the same.

Procedure 12(b)(6). *Aetna Cas. and Sur. Co.*, 404 F.3d at 604. Thus, as stated above, the Court must accept all factual allegations in the proposed pleading as true and draw all reasonable inferences in favor of Defendants. *King*, 189 F.3d at 287; *Jaghory*, 131 F.3d at 329.

### B. *Application to the Present Facts*

In support of their motion to amend, Defendants have submitted a proposed amended third-party complaint and have proffered affidavits and exhibits in support of the merits of their claims. The proposed pleading alleges that Plaintiff seeks damages for injuries allegedly sustained on August 1, 2001, from his use of a Roll Machine, (Proposed Am. Third-Party Complaint ¶ 65), and

> 69. That at sometime prior to August 1, 2001, and at all times herein mentioned, the third-party defendants were engaged in, among other activities, the business of conceiving[,] designing[,] creating, assembling, testing, labeling, preparing, creating warnings for, affixing warnings to, marketing[,] distributing, selling and knowingly placing into the stream of commerce, metal bending machines such as the Roll Machine identified by the plaintiff herein.
>
> 70. That at sometime prior to August 1, 2001, and at all times herein mentioned, the third-party defendants conceived, designed, created, manufactured, assembled, tested, labeled, prepared, created warnings for, affixed warnings to, marketed, distributed and sold large amounts of the Roll Machines.
>
> 71. The aforementioned Roll Machines were conceived, designed, manufactured, tested and sold by the third-party defendants.
>
> 72. Plaintiff alleges that the aforementioned Roll Machine at issue was negligently, carelessly and recklessly conceived, designed, created, manufactured, assembled, tested, labeled, prepared, inadequate warnings were created therefore, inadequate warnings were affixed thereto, marketed, distributed, and sold for use by owners and operators of the machines in general and to plaintiff in particular.

-5-

> 73. On August 1, 2001, plaintiff allegedly suffered injuries while using the Roll Machine.
>
> 74. If plaintiff sustained the injuries and damages as alleged in the Underlying Action, other than through his own negligence, and if it is found that the third-party plaintiffs are liable to plaintiff, then such liability shall derive from the carelessness, recklessness, negligence on the part of the third-party defendants without any carelessness, recklessness, negligence and/or acts or omissions on the part of the third-party plaintiffs and accordingly, the third-party plaintiffs are entitled to common-law and/or contractual indemnification or contribution on the basis of apportionment of responsibility and judgment over and against third-party defendants for all or part of any judgment obtained by plaintiff against the third-party plaintiffs.

(*Id.* ¶¶ 69-74.) The proposed pleading names Luna AB, Luna Export AB, Luna Verktyg och Maskin AB ("Luna Verktyg"), Luna Sverige AB, and Luna ServicePartner AB as third-party defendants and alleges that "[t]he third-party defendants design, manufacture and place into the stream of commerce Type 8266, Size 15/40, Model 110/5 initial pinch sheet metal bending roll machines." (*Id.* ¶ 59.)

Although not plainly stated, it may be inferred from the above allegations that the proposed third-party defendants manufactured the machine that allegedly caused Plaintiff's injury. However, as with the original third-party complaint, on the face of the proposed pleading, it is unclear what connection Defendants have to the proposed third-party defendants that would create a duty on behalf of the latter to the former. *See, e.g.*, *Raquet v. Braun*, 90 N.Y.2d 177, 183 (1997) ("[T]he key element of a common-law cause of action for indemnification is not a duty running from the indemnitor to the injured party, but rather is 'a separate duty owed the indemnitee by the indemnitor.'") (quoting *Mas v. Two Bridges Assocs.*, 75 N.Y.2d 680, 690 (1990)). Although this information may be lacking in the proposed

pleading, in support of their motion to amend, Defendants have produced ample evidence demonstrating that one, if not more, of the proposed Luna parties manufactured and designed the machine at issue and then sold it to Comeq for distribution in the United States.

For example, Defendants have produced the affidavit of Allan Flamholz ("Flamholz"), Chief Executive Officer of Comeq, who explains that Comeq is a distributor of metal fabrication machinery in the United States and Canada. (Aff. of Allan Flamholz, dated Apr. 22, 2005, ¶ 2.) According to Flamholz, among the products sold by Comeq are metal bending machines manufactured by Ruondo and Luna AB. (*Id.* ¶ 2.) Comeq has sold Roundo and Luna AB products since 1981. (*Id.*)

Attached to the Flamholz Affidavit is a letter signed by "Luna International" to "Ruondo Sales AB" dated November 30, 1982, in which Luna International confirms that Ruondo Sales AB may sell their Type 8264 and 8266 metal bending machines under the brand name Roundo in areas outside of Sweden, including the United States. (*Id.* ¶ 5 and Ex. A.) The top of the letter reads "Luna AB" with "LunaInternational" directly below it. The letter specifically references deliveries of these machines to Comeq. (*Id.* Ex. A.)

In June 1983, Comeq purchased through Roundo three "Luna Type 8266, Size 15/40, Model 110/5 bending roll machines bearing serial numbers 1041, 1042 and 1043." (*Id.* ¶ 3.) According to the invoice, which is attached to the Flamholz Affidavit as Exhibit G, the machines were shipped directly from a Luna entity in Alingsas, Sweden, at the same address Luna AB is located today, to Comeq's offices in Maryland. (*Id.*) Specifically, the top of the invoice reads "Luna AB" with "LunaInternational-Swevoc" directly below it. (*Id.* Ex. G.) Flamholz contends that "[i]t is [his] understanding that this lawsuit involves the machine bearing

serial No. 1042." (*Id.* ¶ 4.) In support of this statement, Defendants attach Plaintiff's Response to Defendants['] First Demand For Interrogatories wherein Plaintiff states that the product that he alleges caused his injury was a "Steel Rolling Machine; Hassleholms Mekaniska, Ruondo Hassleholm - Sweden; Machine Type: 1P 110/5; Capacity: 60" x 5/32" MS; Machine No.: 1042; Delivered 1983." (Declaration of Neil Sambursky, dated Apr. 22, 2005 ("Sambursky Decl."), Ex. F ¶ 2.)

In August 1983, "Luna International AB" and Roundo entered into an agreement whereby Luna International AB granted Roundo exclusive sales rights in the United States for its metal binding machines. (*Id.* ¶ 6 and Ex. B.) Thereafter, in September 1983, Roundo and Comeq entered into an agreement making Comeq the sole sales agent for "Ruondo/ Luna" bending machines in the United States. (*Id.* and Ex. C.) On April 29, 2003, Comeq announced on its website that its line of "Sheet and Light Plate Bending Rolls, Type IP, has been manufactured by LUNA and marketed by Roundo for over 20 years. By recent agreement, the machines will now be marketed under the LUNA name." (*Id.* ¶ 7 and Ex. D.)

Defendants also submit the history of "Luna and Luna Export" as provided on the website www.luna.se. It states that the company was formed in 1917 under the name Lindhal & Nermark AB. (Sambursky Decl., Ex. A.) In 1976, "[a] new department, Luna International, [wa]s created to sell Luna's products in Europe and North America." (*Id.*) In 1988, "[t]he export division of Luna [wa]s for the first time organized in a separate company, Luna International AB." (*Id.*) In 2003, "Luna Export AB, a new company in the Luna Group, assume[d] the responsibility for the growing export business." (*Id.*)

In addition, Defendants submit a corporate organizational chart of Luna AB and

-8-

the 2003/2004 Annual Report of Luna AB's parent company which demonstrate that Luna AB is the parent company of the four other proposed third-party defendants, to wit, Luna ServicePartner AB, Luna Verktyg, Luna Sverige AB, and Luna Export AB. (*Id.* Exs. B, C.) Luna AB owns 100% of the shares of each of its subsidiaries. (*Id.* Ex. C at 57.) Moreover, Luna AB and its wholly owned subsidiaries have the same headquarters in Alingsas, Sweden, the same telephone and facsimile numbers, the same e-mail domain name, and share the same three websites. (*Id.* Exs. B, E.)

Based on the limited evidence available without discovery, it is unclear which Luna entity actually manufactured the machine at issue and which entity would be responsible to indemnify Defendants should Plaintiff ultimately prevail; however, it is clear that at least one, if not more, of the proposed third-party defendants would be liable. Although Luna AB denies that it is the manufacturer of the machine at issue and claims that Luna AB was not even founded or registered until February 2003, (*see* Mar. 18, 2005 Aff. of Ulf Carlsson), that allegation conflicts with evidence submitted by Defendants. Specifically, Defendants proffer an affidavit of Gunvor Johanson, the Market Manager of Luna Sverige AB, which was submitted in an Illinois state lawsuit and is dated November 5, 1997, indicating that Luna Sverige AB was formerly known as "Luna AB." (Decl. of Matthew Minero, dated Apr. 25, 2005, Ex. H ¶ 2.)

Construing all evidence in Defendants' favor, the Court finds that Defendants have established that their proposed indemnification claims, if properly pled, are not futile. Further, there is nothing in the record to indicate, and no argument has been made, that Defendants have acted with bad faith, with undue delay, or that any prejudice will ensue to the proposed third-party defendants if the amendment is allowed. *See Dluhos*, 162 F.3d at 69. The

Court therefore grants Defendants permission to file an amended third-party complaint on or before November 15, 2005. The amended pleading shall include allegations describing the relationship and duties between Comeq, Ruondo, and the Luna entities consistent with the above.

### III. *Defendants have Made a Prima Facie Showing of Jurisdiction over the Proposed Third-Party Defendants*

Luna AB also moves to dismiss the third-party complaint pursuant to Rule 12(b)(2) on the ground that the Court lacks personal jurisdiction over it. Although the Court has already ruled that the third-party complaint should be dismissed for failure to state a claim, and has granted Defendants leave to amend, the Court examines the jurisdictional issue in the context of determining whether Defendants have made a prima facie showing of jurisdiction over the proposed third-party defendants.

When served with a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing that a court has personal jurisdiction over a defendant. *See Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). Prior to discovery, a plaintiff may carry this burden "'by pleading in good faith . . . legally sufficient allegations of jurisdiction,' i.e., by making a 'prima facie showing' of jurisdiction." *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). "A plaintiff can make this showing through his own affidavits and supporting materials containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Whitaker*, 261 F.3d at 208 (citations and internal quotation marks omitted). "Where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *Id.* (citations and internal quotation marks omitted).

In diversity cases, a court exercises personal jurisdiction over a party in accordance with the law of the forum state, subject to the requirements of due process under the United States Constitution. *See Whitaker*, 261 F.3d at 208. Here, Defendants contend that the proposed third-party defendants are subject to jurisdiction under both New York C.P.L.R. § 301 and § 302(a)(3). The Court will address Defendants' arguments in turn.

*A.     Section 301*

Section 301 authorizes general jurisdiction over a foreign corporation where it is "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." *McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981). "The court must be able to say from the facts that the corporation is 'present' in the State, 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 77 N.Y.2d 28, 33-34 (1990) (quoting *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267 (1917)). In deciding whether general jurisdiction exists, courts have traditionally looked to the following factors: "the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts and other property in New York; and the presence of employees or agents in New York." *Landoil Res.*, 918 F.2d at 1043. Satisfaction of the doing business standard allows for the assertion of "general" personal jurisdiction, i.e., the defendant is subject to in personam jurisdiction for any and all claims regardless of whether they have any relationship to the defendant's New York activity. *See Laufer v. Ostrow*, 55 N.Y.2d 305, 312-13 (1982).

Defendants' jurisdictional argument under section 301 rests primarily on a November 16, 2003 Exclusive Distributor Agreement between Comeq and Luna Verktyg

whereby Luna Verktyg appoints Comeq as the exclusive distributor of certain Luna machines in the United States. (Flamholz Aff. Ex. E.) Article 13.2 of this Agreement provides that Luna Verktyg's "Resident agent" regarding disputes arising out of this Agreement is "Maria Tufvesson Shuck, Mannheimer Swartling, 101 Park Avenue, 26th floor, New York, NY 10178." (*Id.*) Defendants argue that since Luna Verktyg has a New York agent, it is jurisdictionally present in New York and further, because Luna Verktyg is the agent or "mere department" of Luna AB, Luna AB is similarly jurisdictionally present in New York. The flaw with this argument, however, is that the jurisdictional inquiry looks to a party's contacts at the time the action was commenced. *See* N.Y. C.P.L.R. § 301 commentary 301:8(a) ("Thus, the rule is that the corporation must be doing business in New York at the time the action is commenced."); *see also Gal Aviv. Ltd. USA v. Algat Aluminum Finishing Processes, Kibbutz Alonim*, 1993 WL 338594, at * 2 (S.D.N.Y. Sept. 2, 1993) (same). Thus, Luna Verktyg's designation of a New York agent in 2003 is not germane for present purposes as the present suit was commenced in 2001.

Defendants also rely on their allegation that Comeq has sold fifteen Luna bending machines to customers in New York since 1981. (Flamholz Aff. ¶ 16.) As noted by the Second Circuit, however, "a foreign . . . manufacturer is not 'present' in New York simply because it sells [its product] through a New York distributor." *Jazini*, 148 F.3d at 184 (citing *Delagi v. Volkswagenwerk A.G. of Wolfsburg, Germany*, 29 N.Y.2d 426, 433 (1972)). Accordingly, the Court finds that Defendants have failed to make a prima facie showing of jurisdiction over the proposed third-party defendants under section 301.

### B. Section 302

Section 302(a)(3) provides that a court may exercise jurisdiction over a non-domiciliary who in person or through his agent:

> commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y. C.P.L.R. § 302(a)(3). Thus, section 302(a) confers jurisdiction over a defendant who transacts business within New York *and* the claim arises out of those transactions. *See Sunward Elecs. Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004).

The conferral of jurisdiction under section 302(a)(3)(ii) rests on five elements: (1) that defendant committed a tortious act outside the state; (2) that the cause of action arises from that act; (3) that the act caused injury to a person or property within the state; (4) that defendant expected or should reasonably have expected the act to have consequences in the state; and (5) that defendant derived substantial revenue from interstate or international commerce. *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (2000). The Court finds that Defendants have made a prima facie showing on all five of these elements.

Defendants have alleged that: (1) the Luna entities designed and manufactured the machine at issue; (2) Plaintiff's claim arises out of the alleged defective design and manufacture thereof; (3) Plaintiff's injury occurred in New York; (4) the Luna parties should have reasonably

expected their act to have consequences in New York;[2] and (5) the Luna entities derived substantial revenue from interstate or international commerce. Although there is a dispute as to which Luna entity manufactured the machine at issue, the limited evidence before the Court establishes that Luna AB and/or one of the other proposed Luna parties is indeed the manufacturer. At this preliminary stage in the litigation, Defendants should therefore be afforded an opportunity to conduct discovery to confirm which Luna entity is potentially liable to indemnify Defendants should Plaintiff ultimately prevail. Accordingly, the Court finds that Defendants have made a prima facie showing of jurisdiction over the proposed third-party defendants.

## IV.     *Luna AB's Motion to Dismiss under Rule 12(b)(1)*

Although Luna AB's Notice of Motion states that it is seeking dismissal under Rule 12(b)(1), i.e., for lack of subject matter jurisdiction, it presents no argument in support of its request. Accordingly, this part of Luna AB's motion is denied.[3]

## **CONCLUSION**

For the foregoing reasons, third-party defendant Luna AB's motion to dismiss the third-party complaint is granted and defendants and third-party plaintiffs Comeq's and Roundo's

---

[2] *See LaMarca*, 95 N.Y.2d at 215 ("[T]he defendant need not foresee the specific event that produced the alleged injury. The defendant need only reasonably foresee that any defect in its product would have direct consequences within the State.").

[3] Defendants request that the Court strike Luna AB's ninth affirmative defense of lack of subject matter jurisdiction as well as Luna AB's tenth affirmative defense that it lacks the capacity to be sued. Although these defenses are listed in the copy of Luna AB's amended answer to the third-party complaint that is attached as Exhibit D to Luna AB's Notice of Motion, they are not advanced as defenses in the official court document on file with the Court. Accordingly, Defendants' request is denied.

motion for leave to file an amended third-party complaint is granted. Comeq and Roundo shall file an amended third-party complaint in accordance with the Court's decision on or before November 14, 2005.

**SO ORDERED.**

Dated: Central Islip, N.Y.
November 2, 2005

/s
Denis R. Hurley,
United States District Judge